## MEILY CO. v. LONDON & L. FIRE INS. CO.

(Circuit Court, E. D. Pennsylvania. January 23, 1906.)

### No. 43.

1. CORPORATIONS—ACTS OF OFFICERS—WILLFUL TORTS.

    Where all of the stock of a corporation, except one share, was owned by one family, and M., who was president of the corporation, had control, management, and power of disposition of property of the corporation destroyed by fire the same as if he had the title, evidence that the fire which destroyed the property was deliberately and purposely caused by him to enable the corporation to collect its insurance was admissible in an action brought by the corporation on a policy on such stock.

2. INSURANCE—CAUSE OF LOSS—WRONGFUL ACTS OF INSURED.

    In an action by a corporation on a policy, an instruction that if M. had control, management, and power of disposition of the property the same as if he had title, or if there was an understanding among the stockholders that M. should burn the property in order that they might collect the insurance, and M. did willfully set fire to the store as alleged, defendant could not recover, was proper.

    [Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1138.]

3. TRIAL—INSTRUCTIONS—INADVERTENCIES—PREJUDICE.

    Where, in an action on a policy by a corporation, it was claimed that M., who was president of the corporation, willfully fired the property, that the corporation might collect the insurance, the fact that the court in its charge inadvertently referred to M. as the "plaintiff" was not prejudicial to plaintiff; the jury being nowhere instructed that M. was plaintiff.

4. INSURANCE—ACTION ON POLICY—INSTRUCTIONS.

    Where, in an action on a policy, it was claimed that the president of plaintiff corporation willfully set fire to the property, and the court

charged that, in order that such fact should constitute a defense, it was necessary that the corporation either assented to or had knowledge of the burning, the fact that the court modified certain requests to charge by adding that they were true if the president did not burn the property as alleged was not error, as eliminating the question of plaintiff's assent to or knowledge of the burning.

5. SAME—INCENDIARISM—INSTRUCTIONS.

Where, in an action on a policy, four witnesses were called to prove that the fire started in at least three different places at the same time, it was proper for the court to charge that the jury should take that matter into consideration in determining whether or not the fires were caused by human agency.

At Law. On motion for new trial.

Robert Snodgrass and A. H. Wintersteen, for plaintiff.
Charles H. Bergner and Frank R. Shattuck, for defendant.

HOLLAND, District Judge. This was a suit on two fire insurance policies, one on the merchandise in the store for $2,000, and the other on the fixtures for $1,000. One ground of defense, and the only one of importance in considering the reasons for a new trial, was that George W. Meily, the president of the plaintiff company, was manager of the business, and that the fire was caused by his direct and willful act, with the knowledge of the owners, in purposely causing the fire to occur in order to defraud defendant in this case and other insurance companies that had issued policies upon a portion of the same property covered by the policies of the defendant company.

There are 21 reasons filed why a new trial should be granted, but they raise only three questions, and can be considered in the following propositions:

1. This being a corporation, the court erred in permitting evidence to be admitted to show the burning was caused by George W. Meily. The defendants called a witness to show that the fire which destroyed the property in suit was deliberately and purposely caused by George W. Meily, president of the corporation, and upon objections to the admission of this testimony the court ruled as follows:

"In view of the fact that the stock was all owned by this one family, excepting one share, and their connection with the inventory and appraisement and also books and papers, and their action before and after the fire, the evidence will be admitted, for the purpose of showing the building was burned by George W. Meily, the plaintiff, with the assent of the other stockholders."

The witness then testified to having seen a person appear in the second story back room, with a light in his hand, in a "stooped position," and immediately thereafter hurried from the room. The same witness testified that in a few minutes after noticing this man fire broke out at the point he had been seen. After all the evidence had been submitted, both by the plaintiff and the defendants, the court charged the jury that:

"If from the whole evidence you find that G. W. Meily had control, management, and power of disposition of this property the same as if he had the title, or that there was an understanding among them [the stockholders] that he should burn the property in order that they might collect the insur-

ance, and that G. W. Meily did, as alleged by the defendant, willfully set fire to his store on the night of January 4, 1905, then you should find a verdict for the defendant."

It will not be possible to state all the facts and circumstances brought out in the evidence in a trial lasting seven days, but upon a review, however, I am still convinced of the correctness of the ruling admitting evidence to show G. W. Meily's responsibility for the fire, and that there was sufficient evidence to submit to the jury upon the question as to whether or not the fire was caused by the willful act of George W. Meily under circumstances which would make his act a defense in this case. It may be admitted that the willful burning of a property by a stockholder in a corporation would not be a defense against the collection of the insurance, nor could a plaintiff corporation be prevented from collecting fire insurance because an agent willfully set fire to the property without the participation or authority of the plaintiff company. All the cases cited by the plaintiff against the admission of the evidence excepted to and the charge of the court go no further than to sustain this position.

In the cases cited the language used in restricting the right to recover on fire insurance policies, when the defense is incendiarism on the part of the plaintiff's agent or representative, to cases where the principal has been shown to be entirely innocent of the least participation or assent, is so clear and emphatic as to affirmatively establish that any participation or assent on the part of the principals would prevent a recovery; and in the case at bar there was not only the question of assent and knowledge on the part of the principals, but the real ownership of the merchandise destroyed was questioned. The defendants insisted that George W. Meily was the real owner. In the case of Kirkpatrick, assignee of the Abbey Press Company, v. Allemannia Fire Insurance Company of Pittsburgh, Pa., tried at the March term, 1904, in Suffolk county, N. Y., Justice Garretson charged the jury as follows:

"If the plaintiff's assignor, the Abbey Press, met with an honest loss, as Kirkpatrick claims it did, there ought not to be any reason why the defendant should interpose a defense to the plaintiff's claim, and there should be no hesitation on your part in finding a verdict in favor of the plaintiff for the full amount of the claim with interest. But if the Abbey Press, or those who owned its stock and controlled it as its managers, have done that which the defendant company claims was done by the Abbey Press, acting as every corporation must act through those who represent it as its agents and officers, with a purpose which was conceived either at or after the time when the contract of insurance was made, and set fire to the building in which the property covered by the policy of insurance was stored, or set fire to the property contained in that building, and thus brought about the fire which caused the loss, those are acts which the law will not sanction, which constitute fraud, and which rightly and properly will defeat a recovery on the part of the insured for the loss sustained under such circumstances. While the defendant company admits all the facts which go to make its liability as alleged by the plaintiff in his complaint, yet it does claim as a sufficient and operating reason why the plaintiff should not recover that the Abbey Press or some one or more of its officers, acting in association with a man bearing, as it claims, close business and personal relations with the officers and agents of the Abbey Press, willfully, consciously, and intentionally ignited this place

and brought about the destruction by fire, either in whole or in part, of the property, and therefore that this plaintiff ought not to be permitted to prevail. This defense which the defendant has interposed here is one, as I have said, which if maintained would be fatal to the plaintiff's recovery."

On appeal to the Appellate Division, Justice Miller affirmed the action of the court below in the following language:

"The plaintiff insists upon this appeal that there was no evidence either that the fire was of incendiary origin or that the insured, the Abbey Press, was responsible for it. The court submitted it to the jury to find for the defendant only in case they found that the fire was purposely set, with the knowledge or approval of the officers of the Abbey Press. The jury found that the fire was of incendiary origin, produced with the knowledge and approval of the officers of the insured, and after carefully examining the evidence I am convinced that that finding is fully warranted." Kirkpatrick, Assignee, v. Ins. Co., 102 App. Div. 327, 92 N. Y. Supp. 466.

The facts in this case seem to be nearly the same as the one at bar. I have been unable to find any other reported cases where the same question arose, nor has there been any case brought to my attention which holds that a defense, such as made in this case, will not be a bar to recover for loss on a fire insurance policy.

2. That even if the alleged incendiarism was a question for the jury that question was improperly submitted as against the plaintiff, in the manner certain evidence was submitted and in the manner certain of the plaintiff's points for charge were answered. In the charge of the court, George W. Meily was inadvertently referred to as "the plaintiff," and it is claimed that this prejudiced the plaintiff's claim with the jury. The jury were nowhere instructed that George W. Meily was the plaintiff, and it was impossible that they should have so understood it. These inadvertent references to George W. Meily as plaintiff were made under circumstances that no reasonable being could have understood that it was the intention of the court to leave the impression that George W. Meily was the plaintiff in the case, and I have no doubt but that the jury fully understood that George W. Meily was president, and that the question for them was his connection with the fire, with the assent and knowledge of the others claiming to be part owners of the property.

Again, it is objected that the court erred in answering one of the plaintiff's points for instructions in their favor in saying to the jury "this is true if George W. Meily did not burn the property as alleged," because it is claimed the answer left out of question the other necessary conditions of the plaintiff company's assent to or knowledge of the burning, and that this language left the impression that George W. Meily's independent act in burning the property would prevent a recovery. We do not think this objection is well founded, because the jury had been instructed as to these other necessary conditions of assent and knowledge on the part of the other stockholders, and it had been so frequently reiterated and referred to that it was impossible they should forget it, and unreasonable to expect the court at every reference to the burning to repeat to the jury what was obviously implied by the phrase "as alleged" at the end of the sentence, this

is true if George W. Meily did not burn the property "as alleged."

3. The objection that there was no sufficient evidence to submit to the jury that the fire started at three different places at the same time, and it was error for the trial judge to submit any question of fact upon the hypothesis that the fire so started, is not well taken, as the evidence shows that there were at least four witnesses called to prove that the fire started in at least three different places at the same time, and the court instructed the jury on this point as follows:

"You will take into consideration what has been said as to the fire starting in three different places in that store. If the fire was seen to break out at two or more places at the same time, at points distant from each other, it is for you to say whether or not those fires were started by human agency or whether it was accident or misfortune that started them. That is a question for you. The fact that they broke out at three different places at once, if such is the fact and you find such to be the fact, is a matter for you to take into consideration in examining whether or not those fires were caused by human agency."

Similar instructions were approved on appeal in the case of Kirkpatrick v. Ins. Co., supra.

Motion and reasons for a new trial are overruled, and a new trial refused.