ORDER
 

 OWENS, District Judge.
 

 Before the Court is Plaintiff Blitch Ford, Inc.’s (“Blitch Ford”) Motion For Partial Summary Judgment [Tab # 227] and Defendant MIC Property And Casualty Insurance Corporation’s (“MIC”) Motion For Summary Judgment [Tab # 229].
 

 I. Background
 

 This action arises from an arson fire that destroyed the building and contents of the Blitch Ford dealership in Homerville, Georgia, on the night of June 19, 1996. Margaret Blitch owns 51% of the Blitch Ford, and is also the company’s president. Brett Blitch, her son, owns the remaining
 
 *1379
 
 49% of the company, and is the company’s secretary. Brett Blitch and Margaret Blitch are the sole directors of the company.
 

 Margaret Blitch submitted an application as a replacement dealer for the Ford dealership in Homerville, Georgia in 1993 and resigned the agreement in June, 1997. Blitch Ford lost money for most of the period between its inception and the fire. During the 18 months prior to the fire, the company had 714 checks returned for insufficient funds.
 

 Prior to the fire, Blitch Ford had entered into a contract with MIC to provide insurance for Blitch Ford under MIC Policy No. MPK 0007033 00 (the “Policy”). The policy covered losses to the dealership property owned by Blitch Ford, and provided approximately $605,000 in coverage.
 

 The Policy contained a list of general exclusions (acts not covered by the Policy). One of these exclusions was: “Acts Committed by You or Your Partners: Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.”
 
 Policy,
 
 Crime General Provisions.
 
 [1]
 

 The Policy also stated that MIC “will not pay for any ‘loss’ or damage in any case of: ... (2) concealment or misrepresentation of a material fact; or (3) Fraud ... committed by you or any other ‘insured’, at any time, and relating to coverage under this policy.”
 
 Id.
 

 MIC paid Blitch Ford a lump-sum of $50,000 following a submission by the shareholders of a claim for benefits under the policy. Later, the state fire marshal informed MIC that Brett Blitch may have been involved in the fire. On July 31, 1996, MIC communicated to Blitch Ford that it was denying the claim on the grounds of violations of the Fraud and Concealment provision and Criminal Acts exclusion contained in the policy. MIC made no payments to Blitch Ford after the initial $50,000 lump-sum payment.
 

 Brett Blitch was indicted for arson and conspiracy related to the June 19, 1996 fire, and a jury found Brett Blitch guilty of these counts.
 

 In civil litigation arising from the fire, Blitch Ford filed a cross-claim against MIC for benefits under the Policy on February 28, 1997 in the Superior Court of Clinch County. MIC then removed the action to this court.
 

 Blitch Ford has filed a motion for partial summary judgment against MIC with regard to liability under the Policy, and MIC has filed a motion for summary judgment on Blitch Ford’s claims.
 

 II. Discussion
 

 A. Summary Judgment Standard
 

 Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law.”
 
 Federal Rules of Civil Procedure
 
 56(c).
 
 See Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
 
 Irby v. Bittick,
 
 44 F.3d 949, 953 (11th Cir.1995).
 

 The evidence and all reasonable factual inferences arising from it must be viewed in the light most favorable to the Plaintiff, the non-moving party.
 
 See Welch v.
 
 Celotex
 
 Corp.,
 
 951 F.2d 1235, 1237 (11th Cir. 1992). The movant’s entitlement to judgment as a matter of law is satisfied where “the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has
 
 *1380
 
 the burden of proof.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in
 
 Federal Rules of Civil Procedure
 
 56(c), genuine issues of material fact necessitating a trial.
 
 See id.
 
 at 324, 106 S.Ct. 2548.
 

 B. Blitch Ford’s Claim
 

 1. Liability
 

 The Court’s jurisdiction lies in diversity, therefore Georgia law applies.
 
 See Erie R. R. Co. v. Tompkins,
 
 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Georgia law, a policy of insurance is a contract and contract law principles apply to questions involving insurance.
 
 See Bradham v. Randolph Trucking Co., Inc.,
 
 775 F.Supp. 395 (M.D.Ga.1991),
 
 aff'd
 
 960 F.2d 1018.
 
 See also Richards v. Hanover Ins. Co.,
 
 250 Ga. 613, 299 S.E.2d 561, 563 (1983). The rights of the parties are determined by the language of the contract.
 
 See Fidelity Deposit Co. v. Sun Life Ins. Co.,
 
 174 Ga.App. 258, 329 S.E.2d 517, 519-20 (1985).
 

 Blitch Ford argues that it has not been paid for the losses it incurred due to the fire, and that MIC is liable for coverage proceeds under the Policy. MIC claims that it is not liable because the plan excludes coverage in instances of criminal acts committed by the insured, and in instances of misrepresentation of material facts or fraud by the insured.
 

 2. Criminal Acts
 
 Clause.
 

 Blitch Ford disputes whether Brett Blitch committed arson, and argues that it can recover, in spite of any criminal acts, because it was Brett Blitch and not Blitch Ford that was convicted of arson. This argument rests on the fact that “Blitch Ford, Inc.” was the named insured, and not Brett Blitch.
 

 a. Collateral Estoppel
 

 Blitch Ford argues that Brett Blitch’s involvement in the fire that destroyed the Blitch Ford dealership has not been proven and that res judicata cannot bind it on the issue of Brett Blitch’s culpability. The Court does not need to address the issue of res judicata (claim preclusion) because, as MIC argues, Blitch Ford is collaterally estopped from denying Brett Blitch’s involvement.
 

 Three requirements must be met before collateral estoppel can apply to a given issue:
 

 (1) the issue be identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action not be significantly heavier.
 

 Securities & Exchange Commission v. Bil-zerian,
 
 153 F.3d 1278, 1281 (11th Cir.1998) (citing
 
 In re Bilzerian,
 
 100 F.3d 886, 892 (11th Cir.1996)).
 
 See also United States v. $80,080.00 In U.S. Currency,
 
 779 F.Supp. 169 (N.D.Ga.1991) (citing
 
 United States v. “Monkey”,
 
 725 F.2d 1007, 1010 (5th Cir. 1984));
 
 United States v. Powell,
 
 494 F.Supp. 260, 263 (S.D.Ga.1980) (quoting
 
 International Ass’n of Machinists & Aerospace Workers v. Nix,
 
 512 F.2d 125, 132 (5th Cir.1975)).
 

 The issue in the case
 
 sub judice
 
 and a necessary issue in the criminal trial of Brett Blitch was whether Brett Blitch committed arson. Brett Blitch was convicted of arson and conspiracy related to the fire that destroyed the dealership. As the burden of proof in the present action is lower than that in the previous action, collateral estoppel applies to the case
 
 sub judice. See Defenders of Wildlife v. Andrus,
 
 77 F.R.D. 448, 454 (D.D.C.1978). Therefore collateral estoppel prevents Blitch Ford from asserting that Brett
 
 *1381
 
 Blitch did not destroy the Blitch Ford dealership.
 
 [2]
 

 Even if collateral estoppel did not apply, there can be no issue of material fact regarding Brett Blitch’s arson conviction.
 

 b. Doctrine of Innocent Co-Insureds
 

 Blitch Ford suggests that Brett Blitch’s fraud cannot defeat the insurance coverage because of the interest of innocent persons. For this, Blitch Ford relies on what it describes as Georgia’s doctrine of innocent co-insureds. This doctrine was arguably established in
 
 Richards v. Hanover Insurance Co.,
 
 250 Ga. 613, 299 S.E.2d 561 (1988). The
 
 Richards
 
 court decided that whether the fraud of one co-insured spouse barred recovery by the innocent co-insured spouse depended upon the language of the insurance contract.
 
 See id.
 
 299 S.E.2d at 563. The
 
 Richards
 
 contract provided that the insurance company would not be liable “in the event of ‘neglect of the
 
 insured
 
 to use all reasonable means to save and preserve property ... ’ ”
 
 Id.
 
 (emphasis in contract). The Supreme Court of Georgia determined that this “neglect” provision was ambiguous, and that Georgia law required the courts to interpret the provision in favor of the insured.
 
 See id.
 
 The court held that Mrs Richards’ obligations were severable from Mr. Richards’ obligations, and therefore Mrs. Richards could recover under the insurance contract if she had not participated in the arson.
 
 See id.
 
 at 564.
 
 [3]
 

 The Court finds
 
 Ric.hards
 
 to be distinguishable from the case
 
 sub judice.
 
 The
 
 Richards
 
 decision turned upon the language of the policy, the Georgia Supreme Court’s construction of that policy, and whether the parties’ obligations were joint or severable.
 
 See Richards,
 
 299 S.E.2d at 563-64. In
 
 Richards,
 
 there were two separate parties identified as insured. The simple fact is that there are no co-insureds in the case
 
 sub judice.
 
 As Blitch Ford has repeatedly stressed in its pleadings, there is only one named insured in this case; Blitch Ford, Inc.
 
 [4]
 

 The
 
 Richards
 
 court did not establish a rule of innocent co-insureds as Blitch Ford suggests, and the court even suggested that a policy could bar “innocent” co-insureds from recovery depending on its language.
 
 See id.
 
 at 563 (finding that whether the “innocent co-insured” could recover under policy depended upon the intended obligations of the policy). The Court finds that there is no Georgia doctrine of innocent co-insureds, and that there are no co-insureds in this case. Therefore
 
 Richards
 
 is inapplicable to this case.
 

 The Court finds Blitch Ford’s reliance on
 
 Sandersville Oil Mill Co. v. Globe & Rutgers Fire Insurance Co.,
 
 32 Ga.App. 722, 124 S.E. 728 (1924), to be misplaced. Blitch Ford suggests, that it has been longstanding policy in Georgia that a corporation is not precluded from recovering when arson by a shareholder is involved (unless the arsonist owns a bulk of the stock and dominates the corporation).
 
 See Blitch Ford’s Brief In Opposition To MIC’s Motion For Summary Judgment
 
 at 19 (citing
 
 Sandersville Oil Mill Co.,
 
 32 Ga.App. 722, 124 S.E. 728). The
 
 Sanders-ville Oil Mill Co.
 
 court did not rule that a corporation could not be barred from re
 
 *1382
 
 covery. The court cited numerous instances where a corporation could not recover, but never issued the holding suggested by Blitch Ford.
 
 [5]
 
 Nothing in
 
 Sandersville Oil Mill Co.
 
 suggests that a corporation can recover unless the arsonist owns the bulk of the stock and dominates the company.
 
 [6]
 

 c.
 
 Brett Blitch’s Acts Exclude Recovery
 

 As a federal court sitting in diversity, the Court is required to apply the Georgia law as declared by Georgia’s highest court.
 
 See CSX Transp., Inc. v. Trism Specialized Carriers, Inc.,
 
 182 F.3d 788, 790 (11th Cir.1999) (citing
 
 Erie R.R. Co. v. Tompkins,
 
 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). The Georgia courts have not ruled upon the issue before the Court; whether an insurance company may refuse to pay proceeds (under a criminal acts exclusion) when a corporation’s director/officer deliberately destroyed corporation property by arson. “In absence of direct authority on point, [this Court] must determine the issues of state law as [it] believes the Georgia Supreme Court would.”
 
 Id.
 
 (citing
 
 Towne Realty, Inc. v. Safeco Ins. Co. of America,
 
 854 F.2d 1264, 1269 (11th Cir.1988)).
 

 The Court believes that the Georgia Supreme Court would apply the former Fifth Circuit’s rationale stated in
 
 Cora Pub, Inc. v. Continental Cas. Co.,
 
 619 F.2d 482 (5th Cir.1980). In
 
 Cora Pub,
 
 a restaurant, owned by a corporation, was destroyed by fire. The insurance company suspected arson, and refused to pay for the loss suggesting that the arson had been the product of an officer or chief stockholder. The corporate owner brought suit to recover the insurance proceeds.
 
 See id.
 
 at 483.
 

 The Fifth Circuit considered three categories of cases regarding insurance fraud by arson.
 
 [7]
 
 The court distinguished
 
 Owl & Turtle, Inc. v. Travelers Indem. Co.,
 
 554 F.2d 196 (5th Cir.1977) where under Florida law, the Fifth Circuit held that as a matter of law, arson could not be attributed to the corporation because it relied on a stipulation by the insurer that the sole stockholder of the corporation was innocent of the crime involved.
 
 See Cora Pub,
 
 619 F.2d at 487. The court noted that there was no stipulation as to the innocence of the shareholders and officers in the case before it, and held that because the arson was committed by an agent and officer of the corporation, there was evi
 
 *1383
 
 dence of the corporation’s complicity.
 
 See id.
 

 It is the third category of cases described in
 
 Cora Pub
 
 that is most analogous to this case.
 
 See supra,
 
 note 7. Brett Blitch was an employee, officer, and director of Blitch Ford, a closely held corporation. The corporation was in dire financial straits, and insurance proceeds would have relieved these problems. Brett Blitch was convicted of arson related to the fire that destroyed the Blitch Ford dealership. Under
 
 Cora Pub,
 
 the Court finds that he was acting on behalf of the corporation.
 

 The Court also believes that Georgia law supports a finding of corporate complicity. Georgia law holds that consent of the corporation is imputed by the acts of Brett Blitch as director and officer.
 
 See Northside Realty Assoc., Inc. v. United States,
 
 605 F.2d 1348, 1353 n. 9 (5th Cir.1979) (noting that the acts of “officers, done within the scope of their employment and for the benefit of their employer, are attributable to the corporate defendant”). “The deceit practiced by the corporation’s high officers in the corporation’s business and for its benefit must be taken to be a corporate act ....”
 
 Kohler v. Jacobs,
 
 138 F.2d 440, 443 (5th Cir.1943).
 
 [8]
 

 Therefore the Court finds that as a matter of law Blitch Ford violated the criminal acts provision.
 
 [9]
 

 3. Misrepresentation Or Fraud
 

 MIC claims that Brett Blitch’s and Margaret Blitch’s statements under oath to a MIC attorney violated the fraud and misrepresentation clauses in the Policy. MIC argues that both officers misrepresented the financial condition of Blitch Ford regarding the time leading up to the fire, and that Brett Blitch misrepresented his involvement in the fire. For MIC to successfully deny coverage based upon misrepresentations “[i]t must appear that [an insured’s] false statements were made wilfully and intentionally for the purpose of defrauding the insurer.”
 
 Georgia Farm Bureau Mutual Ins. Co. v. Richardson,
 
 217 Ga.App. 201, 457 S.E.2d 181, 184 (1995) (quoting
 
 American Alliance Ins. Co. v. Pyle,
 
 62 Ga.App. 156, 8 S.E.2d 154 (1940)). Where a policy so provides, material misrepresentations alone, are sufficient to void a policy.
 
 See Meyers v. State Farm Fire & Cas. Co.,
 
 801 F.Supp. 709, 717 (N.D.Ga.1992).
 

 There appears to be no dispute that the statements under oath by Ms. Blitch and Brett Blitch can be attributed to Blitch Ford. The testimony of a corporation’s officers can be imputed to the corporation.
 
 See Moya Enterprises, Inc. v. Harry Anderson Trucking, Inc.,
 
 162 Ga.App. 39, 290 S.E.2d 145 (1982) (holding corporations cannot make sworn statements).
 

 i. Margaret Blitch’s Alleged Misrepresentation And Fraud
 

 MIC alleges that the following portion of the transcript shows Margaret
 
 *1384
 
 Blitch’s fraud and misrepresentation during her examination under oath:
 

 Q. [Mr. Claxton on behalf of MIC] What was the financial condition of Blitch Ford as of the 19th of January, 1996?
 

 A. [Ms. Blitch] I thought we were in pretty good shape. Great.
 

 Q. Great?
 

 A. Uh-huh [affirmative].
 

 Q. And what are you basing that on?
 

 A. Oh, I don’t know how to tell you.
 

 [Mr. Sutton]. You said 19th of January, ’96 is that right.
 

 [Mr. Claxton]. I didn’t say January did I?
 

 [Ms. Blitch]. Yeah, you did.
 

 Q. All right. The 19th of June—
 

 A. —June.
 

 Q. —1996. Thank you.
 

 A. Okay. The day before the fire.
 

 Q. Still the same answer?
 

 A. Yeah. We were in good shape. On what do I base it?
 

 Q. Yes ma’am.
 

 A. You know — sales and because I felt that we had hired a good [m]anager.
 
 [10]
 

 Examination Under Oath of Margaret Blitch
 
 at 47-49.
 
 [11]
 

 MIC argues that the financial situation of Blitch Ford prior to the fire proves that Margaret Blitch’s descriptions of Blitch Ford’s financial situation were material misrepresentations. In the six months preceding the fire, Bhtch Ford was between $560,000 and $570,000 in arrears.
 
 See Deposition of Roger Metts
 
 at 34. Between January, 1995 and June, 1996, 714 checks that had been issued by Bhtch Ford were returned because of insufficient funds. It is the opinion of MIC’s forensic accountant that Bhtch Ford was undercapitalized from the time of its inception through the time of the fire.
 
 See Affidavit of Howard Zandman
 
 ¶ 58. Bhtch Ford argues that Margaret Bhtch honestly believed that the corporation was in good financial shape.
 

 It is possible that Margaret Bhtch did not make the statements to the insurance company with the intent to defraud MIC. Viewing the evidence in a light most favorable to the non-moving party the Court finds material issues of fact regarding the alleged misrepresentations of Margaret Bhtch.
 

 ii. Brett Blitch’s Alleged Fraud And Misrepresentation
 

 A MIC attorney asked Brett Bhtch if he knew who was responsible for the fire that occurred on June 19, 1996 at the Bhtch Ford dealership. He was also asked if he knew if anyone set a fire at the dealership. His response to both questions was “No, sir.”
 
 Examination Under Oath of Brett Blitch
 
 at 54.
 

 Brett Bhtch and an accomplice were convicted of arson. Brett Bhtch knew who set the fire that destroyed Bhtch Ford, and knew if anyone else had set a fire. Brett Bhtch willfully and intentionally made these statements to defraud MIC. Therefore, the Court finds that as a matter of law that Bhtch Ford violated the fraud and misrepresentation clauses in the policy. This violation is enough to void the
 
 *1385
 
 explicit terms of the policy.
 
 See Meyers,
 
 801 F.Supp. at 717.
 

 III. Conclusion
 

 Brett Blitch, acting on behalf of Blitch Ford, violated numerous provisions of the Policy. Therefore, Blitch Ford’s Motion For Partial Summary Judgment is HEREBY DENIED. MIC’s Motion For Summary Judgment on Blitch Ford’s claims is HEREBY GRANTED.
 

 [1]
 

 . The Policy states: "[throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations.”
 
 Policy.
 
 The Named Insured of the policy is Blitch Ford, Inc.
 
 See id.
 

 [2]
 

 . The Court finds that Blilch Ford and Brett Blitch were in privity as corporation and off’i-cer/director.
 

 [3]
 

 . The Eleventh Circuit has interpreted
 
 Richards
 
 to stand for two points of Georgia law. "First, whether or not Georgia courts will allow an innocent co-insured to recover depends upon the terms of the insurance contract. Second, if there are any ambiguities in the contract, the court will construe the language to allow recovery by the innocent co-insured.”
 
 Sales v. State Farm Fire & Cas. Co.,
 
 849 F.2d 1383, 1385 (11th Cir.1988).
 

 [4]
 

 . Blitch F’ord claims that an innocent shareholder would be harmed by the actions of another shareholder unless the doctrine of innocent co-insureds were applied. Blitch Ford’s claim requires that the shareholders be named as insured parties in the Policy because the doctrine only applies to co-insureds. This is not. the case, and is inconsistent with Blitch Ford’s pleadings and arguments.
 

 [5]
 

 . The holding of the
 
 Sandersville Oil Mill Co.
 
 court barred corporate recovery in a number of instances. These were: (1) where a person who controlled all of the stock of a corporation and was the corporation’s president committed arson; and (2) where the person who caused the fire would be the sole beneficiary of the insurance as the owner or creditor of the insured corporation.
 
 See Sandersville Oil Mill Co.,
 
 32 Ga.App. 722, 724, 124 S.E. 728.
 

 [6]
 

 . It is the Court’s understanding that there is no reported opinion relying on
 
 Sandersville Oil Mill Co.
 
 for the proposition of law that Blitch Ford cites.
 

 [7]
 

 . In the first category, the court noted that in the situation where the individual arsonist owns all or substantially all of the stock of the corporation, courts have pierced the corporate veil to treat the actions of the individual as those of the corporation.
 
 See Cora Pub,
 
 619 F.2d at 486 (citing
 
 General Elec. Credit Corp. v. Aetna Cas. & Sur. Co.,
 
 437 Pa. 463, 263 A.2d 448 (1970)). In the second category, the court noted, when arson was committed "for the benefit of the corporation by an officer or general manager who dominated corporate affairs, courts have often imputed the arson of the individual to the corporation, on the ground that when the owners entrust the business to one person, they should be bound by his actions.”
 
 Id.
 
 (citing
 
 Kimball Ice Co. v. Hartford,
 
 18 F.2d 563 (4th Cir.1927)).
 

 In the third category, courts have permitted a decision from circumstantial evidence that the arsonist acted at the request or with the approval of the insured corporation.
 
 See id.
 
 at 486-87. (citing
 
 Don Burton, Inc. v. Aetna Life & Cos. Co.,
 
 575 F.2d 702 (9th Cir.1978);
 
 Crown Colony Distributors, Inc. v. United States Fire Ins. Co.,
 
 510 F.2d 544 (5th Cir. 1975);
 
 Jamaica Time Petroleum, Inc. v. Federal Ins. Co.,
 
 366 F.2d 156 (10th Cir.1966)). The Court noted that "these cases typically involve closely-held corporations in which principal officers, stockholders or general managers are implicated in the fraud.”
 
 Id.
 
 at 487.
 

 [8]
 

 . Under Georgia law the acts of Brett Blitch, as an officer, are attributable to Blitch Ford. Therefore it is unnecessary for MIC to have drafted the policy to exclude coverage when a stockholder or officer destroys the property without the consent of the corporation. The corporation is deemed to have consented.
 
 Cf. Northside Realty Assoc., Inc.,
 
 605 F.2d at 1353 n. 9;
 
 Kohler v. Jacobs,
 
 138 F.2d at 443.
 

 [9]
 

 . Blitch Ford argues that it should be paid in spite of any criminal acts. Blitch Ford suggests that the remedy for the insurer is to sue the arsonist for his wrongful act by virtue of subrogation to ihe insured’s right. Blitch Ford cites
 
 Merchants Ins. Co. v. Lilgeomont, Inc.,
 
 84 F.2d 685, 689 (5th Cir.1936), for this proposition of law.
 
 Lilgeomont
 
 is distinguishable because in that case a person that did not hold any office or interest in the insured corporation committed the arson.
 
 See id.
 
 at 688-89. In the case at bar, Brett Blitch was a stockholder, an officer, and a director of the insured. The acts of Brett Blitch are imputed to the corporation, and the corporation violated the policy.
 
 See Cora Pub,
 
 619 F.2d at 487. Therefore Blitch Ford may not recover insurance proceeds from MIC.
 

 [10]
 

 . This line was changed on the errata sheet provided by MIC. Ms. Blitch’s original response was: “You know, sales. The financial reports will tell you that. That will tell you the whole story, the financial report.”
 

 [11]
 

 . Before their respective examinations under oath, a MIC attorney warned Brett Blitch and Margaret Blitch that their responses needed to be truthful. They were told:
 

 Lastly, there is a Fraud and Concealment provision in the MIC policy. It’s very important that you answer the questions truthfully and honestly, that any misrepresentations, omissions, misstatements of facts may constitute an independent basis for denial of the claim. And I just ask that you be— make sure that you answer truthfully, honestly and provide complete information to you — to the questions I’m asking.
 

 Examination Under Oath of Margaret Blitch
 
 at 7.
 
 See also Examination Under Oath of Brett Blitch
 
 at
 
 4.